CURRY v. The JOHN NEILSON. See Case No. 2,337.

## Case No. 3,495.

### CURRY et al. v. The LOCH GOIL.[1]

District Court, S. D. Florida. Jan., 1877.

SALVAGE—PILOTAGE—COMPENSATION.

[1. Salvors are not entitled to compensation for unsuccessful effort.]

[2. The fact that the salvors, in bad weather, did all in their power, though to no purpose, may be considered in determining the amount of compensation to be awarded for actual services thereafter rendered to the vessel.]

[3. Services rendered a vessel which had worked off a shoal, and was in imminent danger of again stranding, by piloting her for about 10 miles through a narrow and intricate channel, unmarked by reliable beacons, to open water, and in pumping during the passage, are in the nature of salvage services, and should be compensated as such. The nature of the service only affects the amount of compensation, which should be less than for strictly salvage service.]

[4. The value of the ship and cargo being between $125,000 and $175,000, an award of $2,500 is proper under the circumstances.]

[In admiralty. Libel by John Curry and others against the British bark Loch Goil and cargo for salvage service.]

This vessel, laden with about 3,800 bales of cotton, during bad weather and in a fog, ran onto Brilliant shoal, in the vicinity of the Tortugas. The libellants found her on the shoal with but from twelve to fourteen feet of water around her, (she drawing before going ashore seventeen,) with a strong wind and heavy sea, and thumping heavily. They attempted to get one of their vessels alongside to take out an anchor, but, after carrying away a portion of her rigging and breaking in her rail, found it was impossible, and gave up the attempt. Finally the wind so shifted that the vessel beat herself over the shoal into deep water, where an anchor was let go in time to prevent her going upon another shoal directly in her course. The next morning she was piloted out through the shoals, by narrow and intricate channels, and brought to Key West. The ship was leaking badly, and the libellants assisted in pumping during the entire service. When the libellants first boarded the vessel she was in a position of great danger, weather bad, and she badly aground; but their efforts to relieve her were fruitless,

and their aid unavailing, until she had beaten herself over the reef.

It is not what salvors offer or attempt to do that entitles them to compensation, but what they succeed in doing to the benefit of the property. The efforts of the libellants in this case to carry out an anchor, no matter how earnest, honest or energetic, being unsuccessful, entitled them of themselves to no reward; yet all the circumstances of the case may be taken into consideration, and their willingness to go out in bad weather, and do all within their power, may have some weight in determining an amount of compensation for actual services rendered. After the vessel was afloat she was still in much danger on account of surrounding shoals, and in all probability, had it not been for the presence of the wreckers, and their intimate knowledge of the locality, she would have been driven again aground before being brought to anchor, or in attempting to navigate the channels leading into open waters, which were narrow and intricate, with frequent shoals, which rendered the locality particularly dangerous to one unacquainted with it. This difficult navigation extended about ten miles, and it appears, was unmarked by reliable beacons, there being but two buoys, and they both out of position. The vessel was still in danger, although afloat, and the assistance rendered, although it may have consisted entirely of piloting, authorizes a claim for compensation, which, whether termed "salvage" or not, may be determined by the same rules and decided upon the same principles. It makes a service rendered property in certain circumstances, of either slight or imminent peril, none the less entitled to compensation in the nature of salvage because rendered by piloting alone; such fact only goes to influence the amount to be given, which, for many reasons, is much less than where other service is rendered. The danger is more distant, uncertain, and indefinite, the possibilities and probabilities of the master's being able to extricate his vessel without assistance is much greater, while the peril to the person or property of the salvors, and their labor in performing the service, are, in all such instances, very much lessened.

This question of salvage by pilotage service is not a new one in this court, numerous cases having been determined of like character, and it is but necessary to refer to these to find a course marked out which I consider we can safely follow. We can consider the efforts of the libellants rendered previous to the ship's coming off the bottom only so far as it shows their readiness to do all in their power to assist property in distress. The actual service for which they are to be compensated is the bringing the vessel to anchor so as to avoid the shoal to which she was drifting, the piloting, and the pumping. Numerous cases of salvage services rendered by piloting are cited in sections 196, 197, and 198 of Marvin on Wreck and Sal-

[1] [Published by permission from the MSS. of Hon. James W. Locke, District Judge.]

vage, which it is unnecessary to quote. In the opinion of Judge Marvin, given in The Calcutta [Case No. 2,298], 1854, he cites several cases decided in this court, of this character, namely: The Herman [Id. 6,406], 1840, in which $800, The Augusta [Id. 646], 1839, in which $900, and The Mount Washington [Id. 9,887], in which $1,500, were given, and, after citing such cases, lays down what may be considered a rule for determining amounts to be given in such cases. He says: "The cases cited show that pilot services rendered by the wreckers under extraordinary circumstances have heretofore been rewarded in this court with a considerable degree of liberality. It is both just and politic that they should be so rewarded. In determining the amount of such compensation it is proper, as in a salvage cause, to take into consideration all the circumstances of the case, the situation of the vessel, the difficulties of the channel, and the value of the property, and to increase or diminish the amount accordingly. If the circumstances under which the pilot services were rendered should be very extraordinary, and the value of the property great, the court may, in my judgment, decree a compensation equal to what would probably be the share of the pilot vessel in connection with other vessels in the salvage in case the ship were lost, i. e. to give to the pilot vessel and crew what would be a fair salvage for them alone, and what vessels and crews of her size and numbers ordinarily draw in saving equal amounts of property." In that case, on a value of $60,000, there was a compensation of $1,500 given. I do not consider the circumstances in this case so materially differing from that as to require a departure from the general rule there laid down. The value of the property is large, and the amount to ue awarded will be on such a small proportion thereto that it is unnecessary to obtain an accurate valuation. It will be near enough, for practical purposes, to assume it to be worth anywhere from one hundred and twenty-five to one hundred and seventy-five thousand dollars. This value will permit what I consider a very liberal compensation, without being a burdensome charge. I think $2,500 a liberal reward to the libellants, but which is fully justified by the circumstances. The decree will follow accordingly.

Vide The Angeline [Case No. 385], 1854.