**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

F. GREGG BEMIS, JR.,
<u>Plaintiff-Appellant,</u>

v.

THE RMS LUSITANIA, her engines,
tackle, apparel, appurtenances,
cargo, etc., in rem,                    No. 95-2057
<u>Defendant-Appellee,</u>

and

MURIEL C. LIGHT; FIFTY FATHOM
VENTURES, INCORPORATED,
<u>Claimants.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
J. Calvitt Clarke, Jr., Senior District Judge.
(CA-94-226)

Submitted: August 30, 1996

Decided: September 17, 1996

Before HAMILTON, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Richard T. Robol, HUFF, POOLE & MAHONEY, Virginia Beach,
Virginia, for Appellant.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

F. Gregg Bemis, Jr., filed this <u>in rem</u> action seeking a declaration that he is the sole owner of the wreck of the RMS Lusitania. The district court determined that Bemis is indeed the owner of the ship's hull, tackle, engines, and appurtenances, but declined to award him ownership or a salvage award for the contents of the ship, including the cargo and the passengers' possessions. Finding no error in the district court's decision, we affirm.

I

The hull of the Lusitania rests on the ocean floor off the coast of Ireland, where it was sunk by a torpedo fired by a German Imperial Navy U-Boat in 1915. The wreck is below 295 feet of water, in an area with a strong current and low visibility, making efforts to salvage the contents of the ship extremely difficult.

Bemis seeks to salvage the contents of the Lusitania. He obtained title to the hull of the ship through a series of transfers from the ship's original owner, Cunard Steamship Company ("Cunard"), the Liverpool and London War Risks Insurance Association, also known as the War Reclamations Board ("Liverpool"), and various private parties who have owned interests in the ship over the last eighty years.[1] Bemis has participated in three expeditions to the Lusitania since

_____

[1] Bemis was one of three private owners of the Lusitania. One of the other owners, George Macomber, transferred all of his interest in the ship to Bemis over the course of several years, with the final conveyance in 1993. The other private owner, John Light, is deceased. His widow, Muriel Light, opposed Bemis's claim in the district court, but Bemis and Mrs. Light reached a settlement agreement in 1995, whereby she assigned all of her interest in the ship to Bemis.

2

1982; on those expeditions, he has photographed the ship, placed a plaque on the hull, and conducted salvage operations, attempting to recover the cargo and passengers' personal effects from the ship. The title to the contents of the ship (both cargo and passengers' personal effects), and the right to salvage those contents, are at the heart of the action before this Court. Bemis advances several theories in support of his claim to the contents of the ship.

II

First, Bemis contends that Cunard transferred the cargo and passengers' personal effects to Liverpool, who paid the insurance carrier when the ship sank, and that his entitlement to the contents followed the chain of title to the ship.**2** Although the district court agreed that Bemis had title to the ship, it rejected his claim to the contents on the chain-of-title argument.

Bemis presented no direct evidence regarding the transfer from Cunard to Liverpool. If Liverpool paid Cunard, the passengers, and the cargo owners for the contents of the ship, the possessions and cargo would have been Liverpool's to transfer to Light, and Light's to transfer to Macomber and Bemis. Columbus-America Discovery Group, Inc. v. Atlantic Mut. Ins. Co., 974 F.2d 450, 457 (4th Cir. 1992) (CADG I), cert. denied, 507 U.S. 1000 (1993). However, the record contains no evidence that such claims were actually paid by Liverpool.

Bemis contends that William Andres, the attorney who handled the conveyance from Liverpool to Light, and the later conveyance from Light to Macomber and Bemis, believed that title to the contents of the ship were part of the conveyance. Bemis offered his own statements, Macomber's testimony, and the statements of Andres's former associate, Thomas Swain, regarding their understanding of the title transfer.

_____

**2** Bemis also contended that he obtained title to the contents through later conveyances. However, as the district court noted, if Cunard did not convey title to the contents to Liverpool, no later conveyance could have carried title to the contents.

3

Bemis relies heavily on a letter from Liverpool to Light, which provides in relevant part:

> [T]he Association [Liverpool] paid a total loss claim to the Owners and the rights and interests in the vessel passed to the Association.

. . .

> [T]he Association has sold to you the rights and interests in the wreck of the "Lusitania" on the understanding that it will not be salved as a whole, repaired and put into commission again, and also that the purchaser takes over all liabilities and expenses which might attach to the wreck.

Bemis places great weight on the use of the term "wreck" in the Liverpool letter because, under English law, a wreck includes both the hull of a sunken ship and its contents. John A. Edington, 3A <u>Benedict on Admiralty</u> § 133 (7th ed. 1993 & Supp. 1996). The district court, however, found that the use of the term wreck was not dispositive, and that the word "vessel" in the conveyance language was determinative; a "vessel" is, in English law, the hull of a sunken ship, excluding its contents. <u>See generally</u> 3A <u>Benedict on Admiralty</u> §§ 205-09.

Both interpretations of the letter are reasonable. However, in the absence of evidence about Liverpool's agreement with Cunard, the district court did not err in concluding that Liverpool transferred only the hull, tackle, and appurtenances of the ship to Light.

III

Bemis next asserts that the decision in <u>Pierce v. Bemis: The Lusitania</u>, 1 Q.B. 401 (1986), confirms his title to the contents. The issue in <u>Pierce</u> was whether the British Crown was entitled to artifacts that Bemis and other claimants brought up in a 1982 diving expedition. The court concluded that Bemis and his then-partners had title to the hull, and that the Crown did not have title to the contents of the ship. Further, the court held that Bemis was the owner of the salvaged artifacts by virtue of possessory title. The English court did not,

4

however, determine ownership of the contents that were still on board the ship. As the district court recognized, the English court's decision was not dispositive as to the title of the contents still on board the ship. Further, the district court properly concluded, under the same reasoning as that in the Pierce decision, that Bemis was the owner of the artifacts recovered in the 1993 and 1994 dives.

IV

Bemis only has a claim on the contents still on board the ship if he can establish that the contents were abandoned and he is entitled to relief through the law of finds or the law of salvage. The law of finds expresses "the ancient and honorable principle of finders, keepers.'" Martha's Vineyard Scuba HQ, Inc. v. Unidentified, Wrecked & Abandoned Steam Vessel, 833 F.2d 1059, 1065 (1st Cir. 1987). It applies to findings of sunken property abandoned by prior owners. CADG I, 974 F.2d at 464. A vessel may be considered abandoned if no owner comes forward to claim it during an action to claim ownership rights. Id. at 461. However, some overt act expressing an intent to abandon is also required. Id. A person can be deemed the owner of abandoned property if he takes possession of it and exercises dominion or control over it. Moyer v. Wrecked & Abandoned Vessel, Known as Andrea Doria, 836 F. Supp. 1099, 1106 (D.N.J. 1993). The mere discovery of an abandoned vessel is not sufficient to establish possession. Id.

The district court found that the contents of the Lusitania were abandoned because no one, including the Lusitania's passengers or their descendants, has come forward to file a claim since Bemis commenced this action. CADG I, 974 F.2d at 465. However, the court found that Bemis has only taken possession of the items he salvaged from the ship during his past diving expeditions.

Bemis does not have dominion and control over the remaining contents of the ship because they are still submerged in the hull at the bottom of the ocean, and he does not have a "`high degree of control'" over the contents. CADG I, 974 F.2d at 460 (quoting Hener v. United States, 525 F. Supp. 350, 356 (S.D.N.Y. 1981)). Further, he is not conducting an ongoing salvage operation, another ground for determining that a salvor has dominion and control over cargo of a shipwreck. Hener, 525 F. Supp. at 355; Treasure Salvors, Inc. v.

5

Unidentified Wrecked & Abandoned Sailing Vessel, 546 F. Supp. 919, 926 (S.D. Fl. 1981); Eads v. Brazelton, 22 Ark. 499, 511 (1861). A salvor does not obtain title simply by discovery of lost or abandoned property; transitory presence is not sufficient to establish control. Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel, 640 F.2d 560, 571 (5th Cir. 1981) (citing Brady v. S.S. African Queen, 179 F. Supp. 321 (E.D. Va. 1960)).

Bemis has gone on three expeditions to the Lusitania, one each in 1982, 1993, and 1994.[3] During these trips he took numerous photographs of the wreck, and he recovered ninety-four artifacts on the first expedition.[4] We find that Bemis's results to date do not amount to a showing of actual or constructive possession of the ship's still-submerged contents sufficient to declare him the owner of those contents. See 3A Benedict on Admiralty § 158. However, as noted above, the district court correctly determined that Bemis is the owner of each of the items he has actually recovered from the ship.

V

Bemis also sought a liberal salvage award and an injunction permitting him the sole right to conduct salvage operations. A salvor is

_____

[3] The 1993 dive was primarily for the purpose of researching an article for National Geographic magazine. Bemis's cooperation with the author of the article, Dr. Robert Ballard, was conditioned in part on his ability to accompany Ballard on the trip. According to Ballard, Bemis was cooperative in the 1993 expedition "in that he did not obstruct or in any way try to affect or alter our operational plan that we had submitted to him."

[4] Bemis contends that the district court should have considered the expeditions of Macomber, Light, and others even though Bemis did not personally participate in those operations. Bemis is correct in stating that he need not personally participate in salvage operations for those operations to be attributed to him. He contends that Light and Macomber transferred to him any rights they acquired as a result of their salvage operations in the 1960s and 1970s. However, as the district court noted, Bemis has conducted only three expeditions since 1982. Even if Light and Macomber's actions somehow vested in Bemis, the district court could fairly have concluded that Bemis's relative inaction over the past 14 years was determinative.

entitled to compensation for recovery of the property; he is not generally awarded title to the property. CADG I, 974 F.2d at 459.

To obtain a salvage award, a claimant must establish three elements. First, the property must be in marine peril; underwater shipwrecks are usually considered in marine peril because of the risk of loss. Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel, 569 F.2d 330, 336-37 (5th Cir. 1978); 3A Benedict on Admiralty § 63. Next, the salvage service must be voluntary. 3A Benedict on Admiralty §§ 15, 23, 68. Third, the salvage must be successful, in whole or in part. Id. at § 88. In addition, a salvor must establish possession of the property. Hener, 525 F. Supp. at 357. In the alternative, the salvor must show that he has acted with due diligence and that his salvage operations are ongoing. Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel, 640 F.2d at 567; Andrea Doria, 836 F. Supp. at 1107. A salvor "`must have the intention and capacity to save the property involved, but the [salvor] need not have the intention to acquire it.'" CADG I, 974 F.2d at 460 (quoting Hener, 525 F. Supp. at 357-58).

The district court correctly found that Bemis was not entitled to a salvage award. Although the contents of the Lusitania are in marine peril and Bemis is performing salvage operations voluntarily, the court concluded that Bemis had not had enough success to warrant a salvage award. "`It is not what salvors offer or attempt to do that entitles them to compensation, but what they succeed in doing to the benefit of the property.'" 3A Benedict on Admiralty § 89 (quoting Curry v. The Loch Goil, 6 F. Cas. 995 (S.D. Fl. 1877) (No. 3495)). Bemis has expended significant resources in his attempts to salvage the Lusitania's cargo; however, he has retrieved very few artifacts from the shipwreck.

Further, Bemis's three expeditions over thirteen years did not constitute due diligence. Although Bemis recovered many artifacts in his 1982 dive, the 1993 dive was run primarily by the National Geographic Society as a photographic expedition. The 1994 dive was unsuccessful; the expedition lasted only two days instead of the planned two weeks, and no artifacts were recovered. These facts fully support the district court's conclusion that Bemis does not have an "ongoing" operation, and that his chance of future success is slim.

7

Bemis contends finally that he should be given a salvage award and an injunction preventing other divers from taking artifacts from the ship because of the scientific, historical, and archaeological significance of the wreck.**5** See Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel, 546 F. Supp. at 927-28. The historical, scientific, and archeological value of a shipwreck is a "significant element" in the district court's consideration of a claim for an exclusive salvage award. CADG I, 974 F.2d at 468 n.9. As the district court recognized, Bemis has conducted several expeditions to the ship. However, his expeditions have been sporadic and not highly successful.**6** "It matters not how arduously or skillfully the salvors may have labored . . . salvage remuneration is dependant upon the property's being saved." 3A Benedict on Admiralty § 88. Because Bemis has not participated in sustained, successful salvage operations, the court properly found that an exclusive salvage award was not warranted.

Most troubling is Bemis's contention that "rogue" divers are exploring the shipwreck and taking artifacts to which they are not entitled. One group of divers, known as Fifty Fathoms Ventures, took several items from the wreck; upon the district court's order, these items have been turned over to Bemis, who now has title to them.

Another group of divers, led by British diver Polly Tapson, planned a 1994 dive to the wreck.**7** Bemis submitted as evidence a letter from Tapson to the other divers in her group, stating that their dive would have to be surreptitious because Bemis had not approved it. She referred to the divers' being able to "send [ ] up anything we want to

_____

**5** Bemis's argument in this regard is somewhat disingenuous. He relies largely on the deposition testimony of Dr. Robert Ballard, an oceanographer with whom he travelled to the Lusitania in 1993. Dr. Ballard stated that he is "opposed to the recovery of artifacts" from historic shipwrecks. However, Bemis testified that he wishes to bring artifacts up from the wreck to create a travelling exhibition for museums.

**6** As the district court noted, much of the photography and research which resulted in the National Geographic article is attributable to Dr. Ballard, not to Bemis.

**7** The record does not clearly reflect whether the dive actually took place.

8

from the Lusitania," and said that "[t]he Irish we met seemed a bit funny about us taking anything from the wreck," but would "turn a blind eye rather than risk losing the [group's] charter." She also said that the group's "wreck robbing instincts might have to be a tiny bit restrained." Bemis contends, perhaps correctly, that unless he is awarded an injunction, other divers will take artifacts from the ship. Although the loss of artifacts would be unfortunate, Bemis simply has no right to the injunction absent an ownership interest in the contents of the ship, and he has not established such an interest. Consequently, we find that the district court did not err in declining to issue an injunction.

We affirm the district court's decision. We deny Bemis's motion to expedite as moot.

<u>AFFIRMED</u>

9